DAVID E. NEITLICH & another[1] vs. WAYNE N. PETERSON
& others.[2]

Suffolk.    March 14, 1983. — April 11, 1983.

Present: GRANT, CUTTER, & KASS, JJ.

*Evidence*, Privileged communication, Relevancy and materiality. *Practice, Civil*, Comment on invocation of privilege. *Waiver. Witness*, Claim of privilege.

At the trial of an action for libel brought by the plaintiff, an attorney, a letter to the plaintiff from one who was not a party to the action, inquiring whether the plaintiff would represent her in a divorce proceeding, was properly excluded as a matter within the lawyer-client privilege; a second letter, dispatched after the plaintiff had agreed to represent her and which contained material to assist in her representation in the divorce proceeding, was properly excluded for reasons of lawyer-client privilege and, in the circumstances, for lack of relevance. [624-625]

Review of the parallel and inconsistent lines of Massachusetts decisions pertaining to whether a client who testifies voluntarily thereby waives the lawyer-client privilege and subjects himself to cross-examination as to otherwise privileged matter. [626-627]

At the trial of an action for libel brought by the plaintiff, an attorney who had in the past represented the defendant in business matters and was presently representing the defendant's wife in divorce proceedings, the judge correctly ruled that the wife, a nonparty witness in the instant action, could testify as to communications with the plaintiff concerning the libel action while selectively invoking the lawyer-client privi-

---

[1] Dorothy A. Peterson. As to her the parties agreed to an entry of judgment for the defendants. Mrs. Peterson testified that her inclusion in the action was contrary to her instructions and that she requested Mr. Neitlich to remove her name from the case.

[2] Stuart I. Rosnick, David A. Thomas, and W. N. Peterson Associates, Inc. The actions against Mr. Rosnick and W. N. Peterson Associates, Inc. were dismissed before trial. The complaint against Mr. Thomas was also dismissed following allowance of a motion for summary judgment. The only appellant, therefore, is Mr. Neitlich, and the judgment from which he appeals is in favor of Peterson.

lege as to her correspondence and conversations about the divorce proceedings, concerning which there had been no prior waiver of the privilege. [627-628]

At the trial of a civil action, the judge correctly refused to allow the plaintiff to comment upon a nonparty witness's selective invocation of the lawyer-client privilege based on his finding that the witness was not so closely aligned with the defendant as to make him responsible for her claim of privilege. [628]

CIVIL ACTION commenced in the Superior Court on October 15, 1974.

The case was tried before *Zobel, J.*

*Vincent Galvin* for David E. Neitlich.

*Joseph D. Steinfield (Richard M. Zielinski* with him) for Wayne N. Peterson.

KASS, J. By the time this action came to trial eight of nine counts in the complaint had fallen away. The one count remaining alleged that the defendant Wayne N. Peterson (Wayne) had libelled the plaintiff Neitlich, a lawyer, by dispatching a letter to the Massachusetts Bar Association which expressed the writer's opinion that Mr. Neitlich had violated Rule 3:22, Canon 4 and Canon 5 of the Canons of Ethics regulating members of the Massachusetts Bar.[3] Wayne's grievance was that Mr. Neitlich, who had in the recent past represented Wayne and a corporation controlled by him in business matters, had undertaken to represent Wayne's wife (Dorothy) in divorce proceedings. Presumptively this gave Mr. Neitlich a certain edge on the relevant financial facts, hence the invocation of Canon 4, "A lawyer should preserve the confidences and secrets of a client," and Canon 5, "A lawyer should exercise independent professional judgment on behalf of a client."[4]

---

[3] See Rule 3:22, Canons 4 and 5, and DR4-101, DR5-101 and DR5-105, 359 Mass. 812, 816 (1972).

[4] The case was tried on the assumption that a communication by a member of the public, in connection with a matter which directly concerned him, to persons who had authority to deal with the subject was conditionally privileged. *Wright* v. *Lothrop,* 149 Mass. 385, 390 (1889). Restatement (Second) of Torts § 598 (1976). The question was whether

In response to special questions, a jury answered that: (1) Wayne had not libelled Mr. Neitlich; (2) Wayne had not intentionally or recklessly inflicted severe emotional distress on Mr. Neitlich; and (3) Wayne had not intentionally interfered with contractual relations existing between Mr. Neitlich and Dorothy.[5]  Judgment entered for the defendant, and Mr. Neitlich appeals.  We affirm.

1. *Exclusion of client's letter to her lawyer.*  Mr. Neitlich objects to the exclusion of a letter dated May 7, 1974, from Dorothy to him (Letter No. 1).  Mr. Neitlich's purpose in seeking to introduce Letter No. 1 was that it would disclose that Dorothy had fed Mr. Neitlich financial information more significant than material he might have garnered while acting as Wayne's lawyer.  We have examined Letter No. 1, and it constitutes an inquiry by Dorothy of Mr. Neitlich whether he would act as her lawyer in divorce proceedings against Wayne.  Letter No. 1 was properly excluded.  An initiating letter to obtain professional legal services falls within the lawyer-client privilege. *Foster* v. *Hall*, 12 Pick. 89, 93-94 (1831). *Vigoda* v. *Barton*, 348 Mass. 478, 485-486 (1965).  The same would be true of other written or oral communications having the same objective. *Estate of DuPont*, 60 Cal. App. 2d 276, 288-289 (1943).  Liacos, Massachusetts Evidence 182-183 (5th ed. 1981).  McCormick, Evidence § 88, at 179 (2d ed. 1972).[6]

---

the defendant had abused that privilege by communicating falsehoods recklessly and maliciously.  See generally *Robert L. Sullivan, D.D.S., P.C.* v. *Birmingham*, 11 Mass. App. Ct. 359, 365-366 (1981).  As to the protection which now attends a complaint to the Board of Bar Overseers, see S.J.C. Rule 4:01, § 9(1), 370 Mass. 916 (1976).

[5] In his complaint and his brief on appeal, Mr. Neitlich views his action solely as one for libel.  From a memorandum filed by the trial judge we learn that he proceeded as well on theories of intentional or reckless infliction of severe emotional distress and intentional interference with contractual relations, hence the additional questions to the jury.

[6] *As to this document and the one discussed in the next paragraph, Dorothy was not on the witness stand nor had she yet been called as a witness when an effort was made to introduce the letters in evidence. Mr. Neitlich was on the stand at that time.  The question of the lawyer-client*

On June 2, 1974, Dorothy wrote again (Letter No. 2) to Mr. Neitlich, who had by then agreed to represent her, this time reviewing family assets and rehearsing some of her husband's transgressions. Letter No. 2 was material furnished to assist Mr. Neitlich in advising and representing his client, Dorothy, and as such falls squarely within the lawyer-client privilege. Moreover, in his letter of June 3, 1974, to the Massachusetts Bar Association, Wayne had complained that Mr. Neitlich had used his knowledge of Wayne's business affairs in the course of court proceedings held May 30, 1974. Letter No. 2 (dated June 2, 1974) could not have furnished to Mr. Neitlich for use four days earlier information which had, as Mr. Neitlich argues, rendered academic such knowledge as Mr. Neitlich had of Wayne's business affairs. Thus Letter No. 2 was rightly excluded for reasons of irrelevance as well as privilege.[7]

2. *Selective assertion of privilege.* Dorothy was called as a witness by Wayne and, during the course of direct examination, inquiry was made about conversations with Mr. Neitlich concerning income tax returns prepared for her and for Wayne for 1971, 1972, and 1973. Asked whether she wished to assert the lawyer-client privilege, she inquired of the trial judge: "Is this [as to] all matters or is it just this question." The judge responded: "You would be waiving the privilege with respect to whatever matter you were asked about . . . . In other words, we do it on a step by step basis. The fact [that] you answer one question about

privilege was raised by defense counsel and the privilege was invoked by the trial judge. Invocation of the privilege is within the court's discretion when the holder is not on the witness stand to assert it. *State* v. *Macumber,* 112 Ariz. 569, 571 (1976). *Hodges* v. *Mullikin,* 1 Bland 503, 509 (Md. Ch. 1828). McCormick, Evidence § 55, at 129-130, and § 74, at 152 (2d ed. 1972). 2 Weinstein & Berger, Evidence par. 503(c)[01] (1981).

[7] For an extensive essay on the lawyer-client privilege, see *Harrison* v. *State,* 276 Md. 122, 128-153 (1975), which contains the interesting observation that from the appearance of the privilege in the reign of Elizabeth I to the occasion in 1776 of the *Trial of the Duchess of Kingston,* 20 Howell, State Trials 355, 586 (1816), the privilege was not thought to be that of the client, but rather that of the lawyer as a point of honor.

conversations with your attorney does not open up all matters that you discussed with your attorney."[8]

Whether a client waives the lawyer-client privilege by taking the stand and testifying was, a commentator found in 1935, a question as to which, "[t]he law of Massachusetts . . . is in a highly unsatisfactory state." Spalding, The Uncertain State of the Law As to Waiver of Professional Privilege As To Confidential Communications, 20 Mass. L.Q. (No. 3) 16, 19 (1935). Almost half a century has not provided the resolution the author (later Mr. Justice Spalding of the Supreme Judicial Court) hoped for. Parallel and inconsistent lines of decisions appear in the books. The root of one line is *Woburn* v. *Henshaw*, 101 Mass. 193, 200 (1869), in which the court said, "[I]f the client sees fit to be a witness, he makes himself liable to full cross-examination like any other witness." This rule was followed in *Gossman* v. *Rosenberg*, 237 Mass. 122, 124 (1921), and *Knowlton* v. *Fourth-Atlantic Natl. Bank*, 264 Mass. 181, 196 (1928), and adverted to in *Kendall* v. *Atkins*, 374 Mass. 320, 325 (1978).

The contrary line of cases, holding that the privilege would not be waived by taking the stand, began with *Montgomery* v. *Pickering*, 116 Mass. 227, 231 (1874), although the plaintiff in his direct testimony did not touch on communications with his client. *Montgomery* v. *Pickering* was followed in *McCooe* v. *Dighton, S. & S. St. Ry.*, 173 Mass. 117, 119 (1899). See Liacos, Massachusetts Evidence 215 (5th ed. 1981), which notes the conflict in the cases and favors the approach of the *Montgomery* line, viz., that taking the stand in itself does not work a wholesale waiver of the privilege and that the privilege is waived only as to the subject matter of the testimony given by the witness. That was also the view adopted in Proposed Mass.R.Evid. 510 (July, 1980), which provided that a privilege against disclosure is waived if the holder of the privilege "voluntarily

---

[8] Two other waivers of the privilege occurred. Dorothy testified about a conversation with Mr. Neitlich about the instant action and, on cross-examination, about certain advice she had received from Mr. Neitlich.

discloses or consents to disclosure of any significant part of the privileged matter." See also 8 Wigmore, Evidence § 2327, at 637-638 (McNaughton rev. 1961).

The trial judge in the instant case, therefore, followed a preferred path when he measured the extent of Dorothy's waiver of the privilege by material subject matter. For other instances in which courts have limited waiver of the privilege by subject matter components, see *In re Grand Jury Subpoena Duces Tecum,* 391 F. Supp. 1029, 1033-1034 (S.D.N.Y. 1975) (corporation waived lawyer-client privilege but it could be asserted as to matters relating to representation of an individual officer of that corporation); *Littlefield* v. *Superior Court,* 136 Cal. App. 3d 477, 483-485 (1982) (testimony of witness as to facts does not waive substance of conversation with his lawyer).

It much simplifies decision of the instant case that Dorothy was not a party to the action. In *Woburn* v. *Henshaw, supra, Gossman* v. *Rosenberg, supra,* and *Knowlton* v. *Fourth-Atlantic Natl. Bank, supra,* which concluded that taking the stand was tantamount to a waiver of the privilege, the witnesses were parties. If a party drops the privilege so as to offer testimony favorable to his cause, it is not reasonable that he should be permitted to invoke the privilege on cross-examination. *Teachers Ins. & Annuity Assn. of America* v. *Shamrock Bdcst. Co.,* 521 F. Supp. 638, 641 (S.D.N.Y. 1981). To the extent that Dorothy selectively claimed the privilege, she did so not to make a case, but, it appears, because she was prepared to be a cooperative witness (on cross-examination as well as direct examination) to the extent that questions put to her did not call forth testimony on subject matter as to which she wished to maintain confidentiality. She had testified as to communications concerning the instant action, i.e., Mr. Neitlich's libel suit; she invoked the privilege as to her correspondence about the divorce proceedings with Mr. Neitlich and as to a telephone conversation with Mr. Neitlich which also concerned the divorce proceedings. She impliedly waived her privilege by responding several times during cross-examination by

Mr. Neitlich's lawyer that she had done several things on Mr. Neitlich's advice, but none of those instances touched on her or her husband's financial affairs or their marital life. As to communications with Mr. Neitlich on those subjects, she claimed the privilege. We hold that a nonparty witness may invoke the lawyer-client privilege as to discrete subjects concerning which there has been no prior waiver of the privilege. The judge's rulings on this score, therefore, were correct.

3. *Refusal to permit comment upon invocation of the privilege by Dorothy.* When a witness in a civil case is closely aligned with a party and has an interest in the outcome of the proceeding, the opposing party may comment upon invocation by the witness of a privilege. *Labor Relations Commn.* v. *Fall River Educators' Assn.*, 382 Mass. 465, 471-472 (1981), and cases cited. See *In-Towne Restaurant Corp.* v. *Aetna Cas. & Sur. Co.*, 9 Mass. App. Ct. 534, 537 (1980).[9] The same practical principle applies when a party invokes a privilege. *McCooe* v. *Dighton, S. & S. St. Ry.*, 173 Mass. at 200. *Phillips* v. *Chase*, 201 Mass. 444, 450 (1909). See *Silveira* v. *Kegerreis*, 12 Mass. App. Ct. 906 (1981) (failure of party to take stand). In the instant case the witness was not a party, and the judge expressly found that Dorothy was not "so leagued with Defendant as to make him . . . responsible for her claim of privilege." The claim of the privilege was personal to her, and neither party "should be favored or harmed by the choice of the witness." *Commonwealth* v. *Ries*, 337 Mass. 565, 585 (1958). The judge was right in refusing to let the plaintiff comment upon Dorothy's selective invocation of the privilege.

*Judgment affirmed.*

---

[9] The privilege invoked in those cases was the privilege against self-incrimination.