### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

### Rajat K. GUPTA and Raj Rajaratnam, Defendants.

### No. 11 Civ. 7566(JSR).

United States District Court, S.D. New York.

March 26, 2012.

---

21. 2000 WL 1424931, at *1.

Kevin Patrick Mcgrath, Valerie Ann Szczepanik, George S. Canellos, John Patrick Henderson, Securities and Exchange Commission, New York, NY, for Plaintiff.

Alan Roy Friedman, David Stanley Frankel, Gary P. Naftalis, Michael Stewart Oberman, Robin Marie Wilcox, Kramer Levin Naftalis & Frankel, LLP, New York, NY, Terence J. Lynam, William E. White, Akin Gump Strauss Hauer & Feld, LLP, Washington, DC, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

On February 24, 2012, the parties in this insider trading civil enforcement action deposed Lloyd Blankfein, Chief Executive Officer of Goldman Sachs, a non-party to this proceeding. During that deposition, counsel for defendant Gupta asked Blankfein if he had met with anyone other than his attorneys in connection with preparing for the deposition. *See* Transcript of Deposition of Lloyd Blankfein dated Feb. 24, 2012 ("Blankfein Dep.") at 12. Blankfein answered that he had met with attorneys from the Securities and Exchange Commission ("SEC"), prosecutors from the United States Attorney's Office for the Southern District of New York ("USAO")—including a prosecutor in the pending criminal insider trading against defendant Gupta—and at least one agent from the Federal Bureau of Investigation ("FBI"). When Gupta's attorney asked Blankfein what the SEC and USAO attorneys asked him at these meetings and what documents they showed him, the SEC attorneys objected, invoking their own work product protection pursuant to Rule 26(b)(3), Fed. R.Civ.P., as well as the USAO's work product

protection pursuant to their "common interest" with them, and directed Blankfein not to answer the questions. In a joint telephone conference with the Court held on February 28, 2012, defendants Gupta and Rajaratnam moved to compel Blankfein to answer the questions. The Court directed the parties to submit letter briefs in support of their respective positions. Having reviewed the parties' briefs, which have been docketed, the Court rejects the assertions of work product protection and hereby directs Blankfein to answer any questions about his deposition preparation meetings with representatives from the SEC and the USAO.

■■■ Work product protection is a judicially created doctrine (since codified at Rule 26(b)(3), Fed.R.Civ.P.) that provides a lawyer with a zone of privacy in her work, "free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *accord In re Grand Jury Proceedings,* 219 F.3d 175, 190 (2d Cir.2000). It is distinct from and extends more broadly than attorney-client privilege. *Grand Jury Proceedings,* 219 F.3d at 190 (citing *United States v. Nobles,* 422 U.S. 225, 238 & n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). Here, the SEC argues that the topics the SEC and USAO attorneys discussed with Blankfein and the documents they showed him are protected work product, as they reveal the attorneys' legal opinions, thought processes, and strategy. *See United States v. Dist. Council of N.Y.C.,* No. 90 Civ. 5722(CSH), 1992 WL 208284, at *6–7, 1992 U.S. Dist. LEXIS 12307, at *19 (S.D.N.Y. Aug. 18, 1992) (noting that although work product protection typically applies to documents and things, deposition questions that seek unjustified disclosure of opinions or thought processes of counsel trigger work product protection).

■■■ Work product protection, however, may be waived if the work product is voluntarily disclosed. In this Circuit, the privilege is waived where there is "deliberate, affirmative, and selective use of privileged work-product materials by a party." *Grand Jury Proceedings,* 219 F.3d at 191; *see also In re Steinhardt Partners, L.P.,* 9 F.3d 230, 234

(2d Cir.1993). Here, defendants argue that the SEC and the USAO waived any privilege they may have been able to assert when they shared their work product with Blankfein, a third-party witness in this case. The Second Circuit has not yet specifically addressed whether disclosing work product to a third-party witness is a "deliberate, affirmative, and selective use" of work product that constitutes waiver. Both *Grand Jury Proceedings* and *Steinhardt,* however, cite with approval *In re Sealed Case,* an opinion of the D.C. Circuit, which held that "a party waives its work product protection in civil litigation if it discloses the privileged material to anyone without 'common interests in developing legal theories and analyses of documents.'" *In re Sealed Case,* 676 F.2d 793, 817 & n. 97 (D.C.Cir.1982) (quoting *United States v. AT & T Co.,* 642 F.2d 1285, 1300 (D.C.Cir.1980)).

*Steinhardt* is particularly instructive. The defendants in *Steinhardt* were sued in a private class action for allegedly manipulating the market in two-year Treasury notes. *Steinhardt,* 9 F.3d at 232. During the SEC's preliminary investigation of the allegations underlying the class action, the defendants prepared and furnished to the SEC a memorandum and exhibits that addressed some of the SEC's questions. *Id.* When the private plaintiffs in the class action sought production of that memo in discovery, defendants asserted work product protection. *Id.* The Second Circuit held that the defendants had waived any work product protection when they voluntarily shared their memo with the SEC, an adversary. *Id.* at 235 ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for privilege disappears."); *accord In re Refco Inc. Sec. Litig.,* No. 07 MDL 1902(JSR), 2012 WL 678139, at *3 (S.D.N.Y. Feb. 28, 2012) (holding privilege waived where plaintiffs' counsel shared legal strategy with a third-party witness against whom plaintiffs had tolled claims).

In dicta, however, the Court in *Steinhardt* noted that there "may" not be waiver where the disclosing party and the government "share a *common interest* in developing legal theories and analyzing information, or situations in which the government and the dis-

closing party have entered into an explicit agreement that the government will maintain the confidentiality of the disclosed materials." *Steinhardt,* 9 F.3d at 236 (emphasis supplied) (citing *Sealed Case,* 676 F.2d at 817). Here, however, neither Lloyd Blankfein nor Goldman Sachs share any such common interest with the SEC or the USAO that saves these disclosures from waiver. Blankfein is simply a third-party witness in this case. He is represented by his own attorneys, not the Government, and neither he nor his attorneys takes a position in the instant dispute. *See* Blankfein Dep. at 17. Goldman Sachs is not pursuing its own independent claims against Gupta, nor is it coordinating with the SEC or USAO in developing legal theories or analyzing information. *See AT & T Corp.,* 642 F.2d at 1300 (holding no waiver where MCI Corp. shared its work product with Department of Justice antitrust attorneys, as DOJ and MCI had "common interests" in pursuing their respective public and private antitrust claims against AT & T).

■ The SEC and the USAO chose to meet with Blankfein in the days and weeks before his deposition and go over his testimony. They were under no obligation to do so. *See Grand Jury Proceedings,* 219 F.3d at 191 (contrasting subpoenaed grand jury testimony with voluntary disclosure). This "deliberate, affirmative, and selective" use of work product waives the SEC's ability to now assert the privilege against the defendants. *See also In re Grand Jury Subpoenas Dated June 5, 2008,* 329 Fed.Appx. 302, 303–04 (2d Cir.2009) (summary order) ("Disclosure to Roe waived the privilege because Roe had firsthand and independent knowledge of the facts at the center of the grand jury's investigation, she had separate representation from Doe, and her interests in the litigation were divergent from those of Doe."); *Ricoh Co., Ltd. v. Aeroflex, Inc.,* 219 F.R.D. 66, 70–71 (S.D.N.Y.2003) (holding defendants waived work product protection over emails that defense counsel sent to independent third-party witness with whom defendants did not share common interest); *Medinol, Ltd. v. Boston Scientific Corp.,* 214 F.R.D. 113, 115–17 (S.D.N.Y.2002) (holding work product protection waived for disclosures to independent auditor who did not share common interests with corporation); *Verschoth v. Time Warner, Inc.,* No. 00 Civ. 1193(AGS), 2001 WL 546630, at *4 (S.D.N.Y. May 22, 2001) (holding work product protection waived where company shared litigation strategy against plaintiff with non-party independent contractor).[1]

The SEC argues that several other district courts in this Circuit, including this Court, have afforded work product protection to pre-deposition interviews of third-party witnesses, including those conducted by the SEC and the USAO. *See, e.g., Morales v. United States,* No. 94 Civ. 4865(JSR), 1997 WL 223080, at *1 (S.D.N.Y. May 5, 1997) (Rakoff, J.); *Clute v. Davenport Co.,* 118 F.R.D. 312, 315–16 (D.Conn.1988); *Bercow v. Kidder, Peabody & Co.,* 39 F.R.D. 357, 359 (S.D.N.Y.1965). *Clute* and *Bercow* are inapposite, as both addressed situations where the opposing party attempted to compel the *client* to disclose work product that the client's attorneys had previously reviewed with the client, and thus did not address the issue of waiver presented here by disclosure

---

1. The waiver extends not only to the conversations that the SEC and USAO attorneys had with Blankfein at their preparation session but also to disclosure of any documents they showed to Blankfein during these preparatory sessions. Third-party documents in the possession of an attorney are generally not considered work product. *See In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002,* 318 F.3d 379, 384–85 (2d Cir.2003). The SEC seeks to invoke the "selection and compilation" exception to this general rule, which extends work product protection to documents that the attorney "has so specifically selected and compiled ... in anticipation of litigation [such] that production would necessarily reveal the attorney's developing strategy." *Id.* at 385. The Second Circuit, however, has held that this is a "narrow exception," and requires the party asserting selection and compilation privilege to show that "a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents." *Id.* at 386 (internal quotation marks omitted). The Court finds that the present submissions from the SEC are insufficient to invoke the selection and compilation exception. Moreover, even assuming *arguendo* that the selection and compilation exception applies here, the Court concludes that the SEC and the USAO waived that privilege when they disclosed the documents to Blankfein, a third-party.

to a third-party. *See Clute,* 118 F.R.D. at 313–14; *Bercow,* 39 F.R.D. at 358. It is true, however, that this Court's very brief Memorandum Order in *Morales* is arguably to the contrary of the Court's decision here. But what *Morales* really reveals is the shortcomings of the adversary system. In their very brief letter briefing of the issues in *Morales,* the parties did not advert to *Steinhardt* (*Grand Jury Proceedings* had not yet issued) and the Court therefore, regretfully, did not discuss *Steinhardt* in its four-paragraphed Memorandum Order but instead relied on district court cases antedating *Steinhardt.* Had the Court focused on *Steinhardt,* or had *Grand Jury Proceedings* already been rendered, the Court might well have arrived at a different conclusion in *Morales.*

Moreover, even on its face, *Morales* is distinguishable from the instant controversy. In *Morales,* the questioning attorney expressly conceded that his goal was to ascertain the Government's legal theories. *Morales,* 1997 WL 223080, at *1.[2] Here, by contrast, the questions were plainly directed at witness credibility. The ability of a party to meet with a non-party witness, show him documents and ask him questions, and then mask the entire preparation session in the cloak of work product protection would serve to facilitate even the most blatant coaching of a witness if it could not be the subject of inquiry. To allow the invocation of work product protection to succeed in such circumstances would leave the party taking a deposition with no remedy to determine how, if at all, a witness's testimony was influenced, not by advice from the witness's own counsel, but by suggestions from the questioner's adversary, who, especially if possessing governmental power, was in a position to unfairly pressure the witness. *See SR Int'l Bus. Ins. Co. Ltd. v. World Trade Center Props. LLC,* No. 01 Civ. 9291(JSM), 2002 WL 1334821, at *6 (S.D.N.Y. June 19, 2002) (holding interest in probing witness's credibility and recollection a "highly persuasive showing" sufficient to defeat assertion of work product protection over pre-deposition interviews pursuant to Rule 26(b)(3)). By asking Blankfein what topics he recalls were discussed, what questions he was asked and what documents he was shown, defendants seek to discover how the preparation sessions affected Blankfein's testimony, and do not demonstrate a mere naked attempt to obtain the SEC's and the USAO's legal opinions and strategy.

Although work product protection applies more broadly than the strict requirements of attorney-client privilege, the type of disclosure to a non-party witness presented here falls beyond the "zone of privacy" protection an attorney needs to prepare his case. When an attorney discloses work product to prepare a non-party witness for a deposition, and that witness does not share a common interest with the attorney's client, there has been a deliberate, affirmative and selective use of work product that waives the privilege. Therefore, the SEC and the USAO waived any work product protection they had over legal strategy in their questioning when they posed those questions to Blankfein to prepare him for his deposition. Likewise, the SEC and the USAO waived any selection and compilation privilege over which documents they believed were important when they showed those documents to Blankfein during their prep sessions. Accordingly, the Court hereby grants defendants' motion to compel Blankfein to answer any and all questions concerning his predeposition meetings with attorneys from the SEC and USAO. Because the February 24, 2012 deposition used all seven hours of the allotted deposition time, defendants will have permission to promptly depose Blankfein for an additional two hours, limited to questions about Blankfein's meetings with the SEC and USAO in preparation for his first deposition. *See* Fed. R.Civ.P. 30(d)(1).

SO ORDERED.

---

**2.** On a motion for reconsideration, the attorney in *Morales* argued that the Court had misconstrued this concession, but the Court was not persuaded. *See Morales v. United States,* No. 94 Civ. 4865(JSR), 1997 WL 375738, at *1 (S.D.N.Y. July 8, 1997).